Case No. 24-631. Ibarra-Perez v. United States. Ms. Realmuto. Yes, good morning. May it please the court. Trina Realmuto from the National Migration Litigation Alliance, joined by my colleagues Laura Bellos and Rocio Castaneda Acosta from the Florence Project on behalf of Plaintiff Appellant Mr. Jorge Ibarra-Perez. I'd like to reserve five minutes for rebuttal. The District Court erred when it dismissed Mr. Ibarra-Perez's complaint under the Federal Tort Claims Act for lack of jurisdiction under 8 U.S.C. 1252 G, A5, and B9. The complaint alleges that the United States is liable for acts and admissions of ICE officers for four torts where, after Mr. Ibarra-Perez was granted protection from deportation to Cuba in the form of withholding of removal, ICE agents violated their legal mandate to afford Mr. Ibarra-Perez meaningful notice or an opportunity to contest removal before deporting him to Mexico, a country never designated in the prior proceedings, and where he experienced the very persecution he feared. So can I start? This is an unusual case in the sense that he was deported, as I understand it, five days after the IJ. Now, he didn't appeal that to the BIA. He would have no reason to. He won his case, and Cuba was the only country that was ever designated in the prior proceedings. So let's say he hadn't been deported. Let's say they had just issued a redesignation to deport him to Mexico, but he was still in the United States. They hadn't deported him. What would his relief have been at that point? So your question assumes that ICE would have issued a redesignation. We know that ICE doesn't have a policy to do that. I thought ICE said that at least what I read was at least they'd made representations to the Supreme Court that they would not do a redesignation without giving notice. Correct, and therein lies the problem. I understand that, but what's unusual about this case is he was deported. If he hadn't have been deported and they had done what they have represented, they would do and they would give notice. What would his relief have been? So ICE should have moved to redesignate the country of removal to be Mexico and ask the immigration judge to make that redesignation because that's what's required to happen under the statute and regulations. They would have moved to reopen proceedings. Mr. Abar Perez would have had his opportunity to raise his fair base claim to Mexico. I totally agree with you. For an immigration judge. I totally agree with you, and that is a claim that sounds in due process, right? It sounds in due process, but it's also under the statute, the INA, section 1231B, the designation statutes both carve out B1 and B2, which are the designation statutes, carve out the government's ability to deport to a third country subject to B3. I understand that that would then be a challenge to his removal order. He would say you can't remove me to Cuba, which everyone agrees. And if this had gone through the normal process, he would have had an opportunity to, in theory, to challenge the redesignation to Mexico. And that would have been a case challenging his deportation because he would have then come in and said, you can't deport me to Mexico because I have a fear of persecution. Right. I mean, of course they can redesignate the country. Nobody is challenging ISIS. I don't know that we're disagreeing necessarily that he should have had the opportunity to do it. My point is your claims here sound in due process and in the immigration process. I mean, ultimately, all of that's clearly what they are. Ultimately, his claim is you wrongfully deported me to Mexico, and he should have had the opportunity to challenge that. His ultimate claim is you failed to provide the mandatory protections of notice and opportunity. And that's a challenge to their process of deportation, correct? It's a challenge to their lack of authority to deport him to Mexico without providing those protections. And that is a non-discretionary authority. But it's still a challenge to his removal. It's a challenge to ISIS authority to execute the removal order. Exactly. Whichever way you say it, the point is. No, but that's important because if that's true, then this is barred. Then the claims are barred under 1252A if you're challenging the removal order. That's what the statute says. My friend and I may have a slightly different view of this. But can we start with this? Do you challenge the entry of a removal order? Absolutely not. In fact, at the time this claim was raised, the removal order for which it was executed no longer existed because Mr. Arbaro's case had been reopened and had been granted asylum to Cuba. Did he have counsel at the point in time the removal order was entered? In 2020, he did not have counsel. At the time it was entered and that was the order that they executed. Let's assume he had the full panoply of the Florence Project behind him at that point. Only after they encountered him. This is hypothetical. Let me finish my question. Sorry. You may know, I may be trying to help you. So don't interrupt me. Okay? All right. If he had the Florence Project behind him at that point and he's in receipt of an order of removal and he says, Avarice says to counsel, I'm afraid they're going to send me to Mexico. What can I do? What could he have done? Well, speaking with the record here shows that he had no idea he could be deported to Mexico. And so without notice that he could be deported. This is hypothetical questions are in our purview. I can frame them any way I want. If you want to dispute the facts that apply to your case, please don't. But I'm assuming that he had counsel and he's got an order and it doesn't say where he's going. And he says to counsel, I'm afraid they're going to send me back to Mexico where I have a history of being abused. What can I do? What could he have done? Well, I think that Florence counsel would have said we have no reason to believe that you're going to be deported to Mexico. Because in the Ninth Circuit, the law is that they can't do a last minute change of designation. There was no designation. There was a designation to Cuba and that was withheld. But there was no designation. He's got a blank order of removal that doesn't say where he's going. Correct? Most order of removal say that, but assuming that hypothetical, correct. The facts of this case, did the order of removal say where he was going? It said it was withheld to Cuba. Couldn't go to Cuba. And that the immigration judge would have granted asylum to Cuba if but for this transit ban regulation that was in effect at the time. So what could he have done to avoid? He couldn't have done anything unless he had noticed that he was going to Mexico. And if they had given him notice and a meaningful opportunity, then what should have happened is what is put forth in the amicus brief here. I should have moved to reopen proceedings to designate Mexico. That's how it's supposed to work. And it didn't work in this case. In that way. Counsel, I think you have a good point there. I'm not trying to take that away from you. But my question is, how does that turn this into a tort? I mean, how is that negligent? How is this negligence? It might be a lack of due process. But how is it negligence? Because it was a breach of the government's duty to first screen for a protection claim before a person is deported to a third country. And that is a duty that they have.  They tell the Supreme Court. They give lip service to it all the time to the Supreme Court that that's what they do. And so that's a breach of a mandatory duty. And it's a non-discretionary duty, which means this is why it falls outside of the scope of 1252G. This case is on all fours with ours versus United States. In that case, this court held that an FTCA claim based on the same torts of negligence and intentional inflection of emotional distress could go forward. In a way, this is a cart before the horse, meaning we're not being asked to adjudicate a Federal Tort Claims Act case, which he wants to bring. The question in front of us is can he even file the case? So whether it's a good cause of action under the Federal Tort Claims Act or not at this point, I don't care. It's not in front of me. The question is whether or not he's barred from doing so. So I want just a factual question. The I.J. entered an order that said Cuba is not available. He was then sent to Mexico. Did the I.J. or did any I.J. have any knowledge of or anything to do with him having been sent to Mexico? Absolutely not. So that takes place entirely after the adjudication by the I.J.? Absolutely. So how does that then fit or not fit with the exclusion that we're given in Section 1252? 1252G? Yes. I mean, that's what the fight's all about. Yeah, the fight is about that. I mean, it fits within, it falls outside of the scope of 1252G because in AADC and ARCE, the courts have held that claims that do not arise from discretionary actions or decisions fall outside of the scope of 1252G. And in ARCE, it was also a post-removal order action, which was the impediment to ICE's authority to remove Mr. ARCE. Here, the failure to provide those mandatory procedural protections is the impediment to ICE's authority to deport Mr. Guevara Perez to Cuba. In other words, ICE violated the mandatory obligation it had to provide those protections. And when it didn't provide those protections, it lacked the legal authority. What would you have us do? What would you have us do? I would have you reverse the district court's decision, find that 1252G does not bar this claim. But the jurisdiction stripping statute doesn't apply. Correct. And send it back to district court. What could the district court do? Well, if this court, and I hope this court does rule that those protections are mandatory, but based on the statute, the due process clause, the CAT statute and implementing regulations, if this court finds that 1252 doesn't apply because his claims arise out of the violation of mandatory procedural protections, sends the case back down to the district court, the FTCA case will continue. We've already done nearly all the discovery below. And the case would proceed to summary judgment briefing and then potentially a judge trial. In that circumstance, would the district judge be empowered to tell INS to reverse what they've done? It's too late to reverse what's done. He's actually already. Subsequently, he presented back at the border with a Florence attorney. He got readmitted. He was held in custody. The transit ban that had barred his asylum claim got revoked and the immigration judge granted him asylum. So you'd be looking to damages for what? Absolutely. This whole case is about the damages. So if you win here, basically, the Federal Claims Act case proceeds.  And that's the only thing that would happen and how it proceeds. It proceeds. And that has nothing to do with what we would say because we're not going to instruct us to how that case should go forward. Yeah. This is just a jurisdictional case. Most of this is based clearly on jurisdictional grounds. I see that my time is almost up. We'll give you time for rebuttal. Thank you. May it please the Court. Josh DeSantos on behalf of the United States. I'd just like to take a moment to look at the complaint here because I think that's the crucial document to look at, how the complaint describes the claims and how Plaintiff himself describes the claims in his brief, because the jurisdictional question is the only one before this Court. Page 22 of the complaint, saying the government unlawfully deported him. Page 23 of the complaint, unlawfully deported him. Page 44, I'm sorry, of the excess of record, which is the complaint. Defendant's actions in deporting plaintiff without notice is the basis of the claim. Then that ICE was not authorized to deport plaintiff under these circumstances. Page 45, deprived, he was deprived of liberty by deporting him. Then deprivation of plaintiff's liberty arose from his deportation. Then page 46, that carrying out his deportation in this manner was illegal. That deporting plaintiff without unlawful notice was illegal. These claims are all any cause or claim arising from a decision or action to execute a removal order. So what do you do with our case law that very narrowly construes the relevant statute here in terms of what's excluded? I mean, the Arce case, we've got a lot of cases that say just because it's related to, it doesn't mean that it comes within the scope of the exclusion. So I'm not saying that so long as it's causally related to, but look at this Court's decision in Rauta, for example. Just at the essential level, what this Court's inquiry is, is does a certain set of facts, does a certain set of claims today arise from these listed actions? And it's going to be a line-drawing exercise, right, generally. So what do you do, for example, with the procurium in the Arce case? Assuming that's how I'm supposed to pronounce it. Yeah, so in the Arce case, the Court's reasoning was that there was a stay in place, and the Court described the Supreme Court's holding in the Canvey Holder, which was that when there's a stay in place, you go back to the beginning. It's as if the removal order wasn't in place, and therefore the reasoning is if there's no removal order in place, you can't really execute a removal order. Now look at Rauta by contrast, which is very similar here. In Rauta, the plaintiff was saying the government has no authority to remove me before I have an opportunity to raise my fear claim in a motion to reopen. I understand that the factual situation in Arce is different. I'll just read you from the Arce language, but it's consistent with our other case law. The Court writes, in the government's view, this is the procurium in Arce, in the government's view, this violation of the court's stay of removal order is irrelevant because of the jurisdiction stripping language of 1252G, to any action taken in connection with the removal order. We do not believe that the statute sweeps as broadly as the government contends, and that's consistent with our case law. That is to say we do not read the language, and we have not read the language of 1252G broadly. I mean, it's connected. I get that. But the mere connection is not enough. Well, I'm not saying mere connection is enough, but you do have to give effect to the statute. It does have some effect, right? And when a claim clearly arises, as in this case and as in Rauda. Well, yes and no, but we just heard as a factual matter that the IJ had nothing to do with his going to Mexico. The IJ's order in itself says you can't be sent to Cuba. Then, entirely outside of the process in front of the IJ, we get calls to three countries. Mexico says yes, and bingo, they send him to Mexico. The IJ is not involved at all with that decision. So let me clarify this. This is, I think, an important point to clarify. The statute, the statutory provision we're talking about does also preclude challenges to adjudication, but that's not the part of the statute that's at issue. The part of the statute is execution of a removal order. After the removal proceedings and the IJ proceeding was over, he had an order that said you are removable, just not to Cuba. When the government, when there is an order of removal that does not indicate where the person is to be removed to, is the government free to remove the individual to any country willing to accept the individual? Generally, yes. So the government would walk through the different options for countries in 1231, and one of those is once you go through the list, there is an option for if a country is willing to take them. And here, Mexico was a particularly obvious one because he had a humanitarian visa. But I thought, and maybe this isn't in the statute. Maybe this is just a policy. I thought ICE or the government had said we won't do that without providing notice. So I think the statements that plaintiff has talked about or has raised at oral arguments in other cases, those were about proceedings that were ongoing. So they were in the middle of the proceedings. This is the removal order has been entered. He was given a notice to appear under 1229 that said we are charging you with being removable from the United States. And the countries that you can be removed to are listed in the statute. So normally you wouldn't have reopened this to redesignate or you wouldn't have filed a new redesignation proceeding in some way? No, there is no proceeding because he had gotten a file. Relief B. So you're saying the deportation was lawful, right? Because you could just redesignate this. You did that according to the statute. And if he said, hey, I fear this, I wasn't given any notice, he would have had to what? File a claim from Mexico saying this redesignation – I mean I'm now seeking asylum again? Which he couldn't seek asylum from Mexico. No. What would his relief be?  Let me just clarify that. We're not trying to make a merits argument. We're trying to make a jurisdictional argument. But let me address your factual question. So asylum would be relief from being removed anywhere. You're granted asylum. You could stay in the United States. What he got was not asylum. What he got was withholding only to Cuba. And he didn't appeal. So at that point he had an order that said you are removable under the statute. And that's what I thought because opposing counsel said, well, he didn't have a right to appeal – or he didn't have a need to appeal because he won. I didn't read that that way. He won in the sense that he couldn't be deported to Cuba. But there was an order of removal. That's right. There was an order of removal. He could have during his removal proceedings. He could have expressed and raised a fear claim about Mexico as well. Say he had appealed to the BIA. Would the government have come in and said in that process, hey, by the way, we do plan to deport you to Mexico? Yes, I believe so. I'm not quite sure. But it could have been another avenue to get this. Oh, I mean, absolutely. And actually what happened here in this case. I think that's one of the concerns is, look, Congress could strip away a right to challenge a redesignation. As judges, I think we're pretty hesitant to read the statute. So I think it would provide some comfort if we understood that he actually had a claim or had an ability to challenge this redesignation. Well, so what I'm hearing from you is you don't think there is a responsibility. Well, ordinarily you would. He would have to affirmatively raise a fear. Right. Remember here, the removal proceedings have already concluded. Right. There's been no appeal. It's already final. And the government is just walking through countries they can remove him to, one of which was Mexico, where he had a visa. But if he doesn't know that he's going to Mexico, I mean, is he supposed to pick out 130 countries and say, well, I have a fear of these 70, but you can remove me to these 60? I mean, it doesn't make sense that he would bring that up and say I have a fear of going to Mexico. So just to briefly answer that, I think here Mexico was a particularly obvious one. I think typically if there's going to be a fear claim, like most people will know which countries they're afraid of going to. And you can raise that in a removal proceeding. But the fundamental point here is regardless of what the merits are, you read the complaint here, and it is directly challenging the execution of the removal order at the time. And in Rauda, I mean, the facts of Rauda are very similar because there the plaintiff was saying the government has no authority to remove me while I am trying to raise a fear claim in a motion to reopen because I now have evidence. There's a text that the MS-13 gang has put a hit out on me. And if I go back there, I'm going to be killed. And the government just has no authority to remove me before I can have a chance to adjudicate that. And this court said that challenge is directly a challenge to the execution of a removal order. It is barred by 1252G. I mean, this this case is on all fours. So the government's position is the court has no authority under the jurisdictional strippings statute to deal with this kind of situation where there's a removal order without designation of country. In a record where the petitioner has indicated the problems he's had in Mexico and notwithstanding that can send him basically anywhere the government wants, assuming the country is willing to take it. Correct. So you can raise a motion to reopen. You can seek a stay and that can be litigated. And it has been right. This is what plaintiff did in this case. He sought a motion to reopen afterward and then eventually got asylum. So he's now legally in the United States. So there are vehicles for raising new claims. Even I guess this wouldn't happen. I mean, part of the problem is he didn't appeal to the BIA because he wouldn't have he would not have been deported if he'd appealed to the BIA. And then this might have had time to percolate and figure out Mexico is going to be a problem. But it's hard to say exactly what would have what would have happened if he had appealed. There would have been more time. Can I ask you, Judge Fletcher, read you some of our prior case law, whether those are holdings or whether those are dictated in the Ninth Circuit were bound by reason dicta. Why? You know, most other circuits have said there's no distinction between discretionary and nondiscretionary acts. The Ninth Circuit, we have some language that suggests we have a different view of that. Are we just off? Are we just off base? Or how would you respond to that? I just don't think that you should read the language, the discretionary language in those cases to mean that so long as a plaintiff says that a removal was unlawful, that then you get around the statute because then the statute would just never apply. Right. This is what the Supreme Court said. It's about a separate provision that's similar. It said you can't say that a jurisdictional statute turns on the merits because then so long as someone says it's unlawful, then it never applies. Well, and I think that's where I mean, you know, one one way to look at this is, well, yeah, but the district court can deal with that. Maybe these claims aren't meritorious because they're just repackaging a due process claim as a tort claim. And we don't need to decide that. But I'm not sure that is putting the cart before the horse, because if they're just due process claims challenging the removal, doesn't that go exactly to why there's no jurisdiction in the first place? You can't just repackage claims that would be barred in a new vehicle and then say, well, now now you get to deal with it. Well, I agree that you can't just repackage the claim. I think, as this court said in Rauta, no matter how the plaintiff frames it, if the challenges to the execution of removal order, then there's no jurisdiction in the district court. Recall that what Congress is doing is it's trying to channel these things through the PFR process into the court of appeals. It did not want these kinds of questions being litigated in the district court. Now, I mean, here, I think, as in Rauta, if you read through the complaint, the thing being challenged itself is that he was removed before enough time had passed. Let me spring off a question that my colleague asked in the interim between the entry of the removal order and the execution of the removal order. Was the government under any obligation to give Ibarra notice that they intended to send him to Mexico? I think we are not. We're, again, not really litigating the merits here. I think plaintiff can certainly affirmatively raise a fear claim. And at that point, the government would provide more procedures. But I'm not my question. Yeah, I'm question is, is the government under any obligation where there is an extent order of removal, but no designation has occurred or the government intends to remove the individual, in this case to Mexico, to give the petitioner notice. But that's their intent. The government's intent. So I'm not prepared to really tell you a definitive answer. I think a lot would depend on the circumstances as to what's going on on the ground. So let's just take the facts of this case. We don't have to deal hypothetically at all. Between the time the removal order was entered and its execution, the government intended to remove Ibarra to Mexico, correct? The government asked several countries in Mexico said it would take him back because of his visa. And at some point, put him on a plane to go to Mexico, correct? That's well, yes, transported him there. Does the government have any obligation in that circumstance to advise the petitioner of the intended designation? So I don't believe that plaintiff has cited anything that would require that. So there's there's nothing there's no. For example, I can't answer that with a yes or no. I don't believe there wasn't in this case. Again, I'm speaking, having not fully this case. She says there was no obligation. So what you're saying, I don't believe there's anything that plaintiff decided that would create such an obligation here. But we are here in jurisdiction. And the question before you is, did the cause or claim in the complaint arise from the execution of a removal order? And that the answer to that question is clearly yes. You don't think that relates to due process. The statute says notwithstanding any other provision of law, statutory or non-statutory. So that's that's all claims in Reno versus ADC. The Supreme Court said a constitutional claim of selective prosecution fell within the jurisdiction of our. Well, I would think that because it's due process claim, that makes it more likely to be viewed as a as a challenge to a removal order. I think that's that's right, because those are exactly the kinds of claims that are brought through the PFR process and are supposed to be channeled to the Court of Appeals. I know I know you over time, but let me ask a question or a variation of question that's already been asked. Had he sought review in front of the BIA? Would he have been able to seek review of the deportation order to Mexico? So I think that is to say it's not part of the IJ's order. Right. Right. So can he get review of that as he appeals from what the IJ decided? He would have had review of his asylum claim, which would have prevented removal generally. No, no, that's not my question. Well, I'm answering what he could have. OK. And he could have obviously raised a permanently raised a fear claim about Mexico at any point, including during an appeal. Right. Why would that have been part of his appeal when it was not part of the decision from which he was appealing? He's appealing from the IJ's decision. Right. The IJ's decision said he was removable. Right. So at any point he could raise a fear claim about Mexico. I think Plano says that in his documentation he had talked about some fears about Mexico. So clearly it was on his mind as well. But the IJ's order doesn't say in Mexico. And he's appealing the IJ's order. Yes. It says that he was removable, just not to Cuba. And Mexico would have been a particularly obvious country here because of his visa. So you're saying he could have appealed the IJ's order and the appeal would have included something that was not in the IJ's order? I'm skeptical of that, obviously. Well, look, what I'm saying is at any point he can raise a fear claim is what I'm saying. And he could, you know, but like aside from all of that, the point here is that Congress has made the decision that it does not want these kinds of claims in a district court. Well, what I'm trying to figure out is when or where can he raise it in the administrative process? And I'm deeply skeptical that he can raise it on appeal to the BIA when it's not part of the IJ's order. Let me put it this way. Right. So what is what is at issue in a removal proceeding? The person receives a 1229 notice to appear saying you are removable. Right. At that like generally you can be removed from the United States. And what the statute says is here's a list of countries to which you can be removed. I think at that point the person can raise anything. Right. I shouldn't be removed to Cuba. I shouldn't be removed to Mexico. When, for example, a plaintiff was told he was going to be sent to Mexico. He said, well, I'd rather be sent to Canada or to to Spain. Like he knew that there could be he could be removed or like if he if he didn't know, but it should be clear. But none of that was raised in front of the IJ. That all comes after the IJ's orders entered. Well, he could raise an affirmative fear claim is what I'm saying. At any point. It seems like the better course would have been to move to reopen. And I mean, when I brought up he could have appealed to the BIA. I was wondering whether the government would have been indicated Mexico. I mean, I think Judge Fletcher has a good point that I'm not sure that the BIA could have dealt with the removal to Mexico. But he at least then could have moved to reopen saying, hey, now that I know Mexico. But we're dealing in hypotheticals. Right. We're here on a motion to dismiss. So we don't know exactly what it was. He said. Yes. OK. Thank you very much. We'll give you time for rebuttal. What could he have appealed to the BIA? There were no findings before that. Well, he was removable. He was removable, but he had the assurance of a USC 1231, which says he cannot be removed to any other country subject to 1231. B3B1 says that B2 says that and B3 affords the person. I don't think you want to take the position that you would not appeal and you wouldn't have a right to appeal an order that says you're removable. If the government's position is that people should raise fair claims on appeal to the BIA to any. No, I'm just saying if you have a remove an order of removal, the best course of action is to appeal it and not say it was removable. He had protection, though, and that order couldn't be issued to the only country that the immigration judge designated. It couldn't be executed. Second, the government stood up an open court on March 28th in the DVD case, which we submitted by 28 J. And said it has no policy or obligation to provide people with notice before they're deported to third countries. That is exactly what happened here. Mr. Barberas found out that he was being deported and was deported within a matter of hours. The government says we haven't cited any source of authority for which a person cannot be removed to a third country. Statute provides that the regulations provide that the cat regulations that implement the convention against torture provide that all of them provide. That a person can't be deported to a country where they have a fear and a person can't exercise their rights. If they are not put on notice that they are going to be deported to that third country. And with respect to Rauda, this court's decision in Rauda, first of all, that case involved a person who is trying to stave off deportation to the designated country. It involved a person who is asking the court to delay based on some discretionary action that had not yet been taken place. The petitioner in that case had the opportunity to have his claim heard and adjudicated. And the fact that mandatory protections were violated was not before the court in Rauda. So it's absolutely inapposite to our case here. And finally, this is a case under the Federal Tort Claims Act seeking damages for an unlawful deportation. Federal Tort Claims Act claims simply cannot be raised on a petition for review. And any suggestion otherwise is going to flood the BIA. If what this court rules is that you have to file a motion to reopen based on any of the 197 countries the State Department recognizes because you might have a fear there. That's going to create an absolute chaos before immigration judges and the board. Our point about saying that he indicated he had a fear of being deported to Mexico in immigration proceedings was to show that ICE knew that he had a fear of being deported. So he had a heightened duty to provide a screening before they deported him there. They knew he was afraid. Okay. Counsel, we've given you extra time there. And I think we have your argument. Thank you. Thank you to both counsel for your arguments in this case. The case is now submitted.
judges: HAWKINS, FLETCHER, NELSON